DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Cary S. Clay, appeals from the decision of the Median County Court of Common Pleas which found him guilty of multiple counts of gross sexual imposition. We affirm.
 {¶ 2} Defendant was indicted by the Medina County Grand Jury on four counts of rape in violation of R.C. 2907.02(A)(2), four counts of sexual battery in violation of R.C. 2907.03(A)(5), and four counts of gross sexual imposition in violation of R.C. 2907.05(A)(1). Defendant pleaded not guilty at his arraignment.
 {¶ 3} A jury trial was held on February 17-20 and February 23, 2004. The jury found Defendant guilty on three counts of gross sexual imposition, but acquitted him on the remaining charges. Defendant was sentenced to seventeen months in prison. Defendant now appeals, raising four assignments of error for our review.
 ASSIGNMENT OF ERROR I
"The trial court erred by giving an Eskridge instruction to the jury concerning the essential element of `force,' where the alleged victim was not a child of tender years and her will was not overcome by fear or duress."
 {¶ 4} In his first assignment of error, Defendant claims that the trial court erred by giving an Eskridge instruction to the jury on the element of "force." He maintains that the jury instruction was improper since the victim was not a child of tender years and her will was not overcome by fear or duress. We disagree.
 {¶ 5} We review jury instructions under an abuse of discretion standard. State v. Chinn (1999), 85 Ohio St.3d 548, 574-5. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the court that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 6} On the element of force, the trial court gave the following jury instruction:
`"Force.' Force means any violence, compulsion, or constraint physically exerted upon or against a person or a thing.
"Now, the `force of a parent or other authority figure.' When the relationship between the victim and the Defendant is one of a child and parent or stepparent, the element of force need not be openly displayed or physically brutal. It can be subtle, slight, and psychologically or emotionally powerful. Evidence of an express threat of harm or evidence of significant physical restraint is not required.
"If you find beyond a reasonable doubt that under the circumstances in evidence that the victim's will was overcome by fear or duress or intimidation, the element of force has been proved."
 {¶ 7} In State v. Eskridge (1988), 38 Ohio St.3d 56, 58-59, the Ohio Supreme Court determined that, in the context of a parent-child relationship, "[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." (Citations omitted.) The court held that the same degree of force may not be required upon a person of tender years as would be required where the parties are more nearly equal in age, size and strength. Id. Application of the Eskridge standard has been extended to stepparents and others standing in loco parentis. See State v. Riffle
(1996), 110 Ohio App.3d 554, 561.
 {¶ 8} Defendant was the victim's stepparent. However, he maintains that since she was not "of tender years," the Eskridge standard does not apply. Defendant relies on State v. Schaim (1992), 65 Ohio St.3d 51, for the proposition that the Eskridge standard does not apply where the alleged victim was a young adult. The case at hand is distinguishable from Schaim. In Schaim, the twenty year old victim testified that no force was used by the defendant, her father. The court held that "a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her." Schaim,65 Ohio St.3d at 55. In the case at hand, the victim was sixteen, she had not reached the age of majority, she lived in the same house with Defendant, and she testified that she was scared of Defendant.
 {¶ 9} Defendant had been a father figure to the victim from the time he married her mother when the victim was six years of age. In January of 2001, the victim woke up at night to find Defendant at the foot of her bed masturbating. She testified that he regularly came into her room at night from that point on to masturbate. Defendant then began fondling her breasts and vagina under her clothes. One night, Defendant put his penis on the victim's arm and she rolled over to avoid it. The victim testified that she would pretend to be asleep, and would turn over and roll away when Defendant would touch her, hoping that would discourage him.
 {¶ 10} The victim testified that Defendant had digitally violated her at least three times. The victim moved her bed into a cubbyhole area in the room that she shared with her sister to make it harder for Defendant to approach her. The victim testified that one night "[she] woke up with his hands on [her] vagina, and [she] sat right up. It scared [her], and not even realizing what [she] was doing * * * [she] asked him, `What are you doing?'" Defendant then pretended to be tucking in her sister. The victim testified that she would move around in her bed, roll over, or pull the covers up to try to discourage Defendant from touching her.
 {¶ 11} The victim's sister testified that she had seen him at night with his hands under her sister's covers. One time, she stated, the covers were down and she could see Defendant feeling her sister's chest. The victim testified that Defendant would come into their room about four times a week. She said that she was too scared to tell her mother about what was happening because "he was supposed to be [her] dad."
 {¶ 12} Defendant would talk to the victim about masturbation and he had told her not to tell her mother about the conversations because she would get really mad. The victim testified that she felt she could not tell anyone about Defendant's actions because she was worried that it would split up the family and her mother would be hurt by it.
 {¶ 13} In State v. Rutan (Dec. 16, 1997), 10th Dist. No. 97APA03-389, the Tenth District Court of Appeals dealt with an issue similar to the one at hand. In that case, the defendant was the victim's legal guardian. The victim was one of four girls, ages fourteen to fifteen that Defendant had been convicted of engaging in gross sexual imposition. The victim, Paradise, had been living at the defendant's house. One night she awoke to find that he had placed his hand inside her underwear and was fondling her vaginal area. "Because she did not want [the defendant] to know she was awake, Paradise rolled over and [the defendant] removed his hand." Id. In Rutan, as in the case at hand, the defendant argued that the evidence did not establish force for the purposes of supporting his conviction for gross sexual imposition. The Court disagreed with the defendant. The court held that:
"[The defendant] was Paradise's legal guardian and, as such, he was in a position of being a parental figure. Furthermore, extremely little force is required when one's victim is asleep. Obviously, appellant had to move Paradise's underwear and perhaps even the covers in order to place his hand inside her underwear. Under this fact pattern, the evidence of force was sufficient to withstand a directed verdict." Id.
 {¶ 14} As in Rutan, in the case at hand, Defendant would molest the victim while she was sleeping. He would move her covers and her underwear, and he had to exert at least minimal force to digitally violate her.
 {¶ 15} In State v. Oddi, 5th Dist. No. 02CAA01005, 2002-Ohio-5926, the Court held that an Eskridge instruction on force was proper for establishing the element of force in a gross sexual imposition conviction where a driver's education teacher was fondling students who were fifteen and a half years old.
"The minors involved in this case are younger [than] the twenty-year old adult the Supreme Court faced in Schaim, but neither were they children of tender years. Although not a parent, or in loco parentis, appellant was certainly in a position of authority, and held a certain amount of power over an undoubtedly coveted prize to a child of fifteen-and-a-half of a driver's license. Each of the girls testified the conduct took place within the car; a closed environment with no easily accessible escape given the circumstances. The girls testified this conduct occurred while they were driving in deserted areas, unfamiliar to them. All of the girls testified they thought of stopping the car and getting out, but ultimately decided against it because of the bad weather, the unfamiliar area or what they believed appellant's reaction to the situation would be. While an adult might have managed the situation differently, our society does not generally expect a fifteen-year-old to have the emotional or practical experience necessary to face such a situation. Given all of the circumstances surrounding this case, we find no error in the trial court's force instruction." Id.
 {¶ 16} In the case at hand, Defendant was a father figure to the victim; her step-father. The victim testified that she was scared of him touching her and that she would try to move away from him so that he would stop violating her. Defendant's psychological influence over the victim was such that she was constantly preoccupied with being molested. She could not sleep at night, she was worried, and her grades dropped. The victim testified that Defendant had a particularly controlling nature. As an authority figure over the victim, Defendant was in a position to assert force by subtle and psychological means. We agree with Defendant that the victim was not a child of tender years; however, she was a minor and Defendant was her step-father.
 {¶ 17} The victims in the above cases were fifteen years of age compared to the instant victim's sixteen years. Like the other victims, the victim in the case at hand was molested by someone in an authority position. Like the other victims, the victim in this case was not certain how to stop the advances from her stepfather.
 {¶ 18} We do not find that the trial court demonstrated perversity of will, defiance of judgment, undue passion, or extreme bias in giving the force instruction to the jury. As such, we find that the trial court did not abuse its discretion in instructing the jury on the element of force as it did. Consequently, Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"There was insufficient evidence to support the jury's verdict, and Defendant's convictions for gross sexual imposition were against the manifest weight of the evidence."
 {¶ 19} In his second assignment of error, Defendant alleges that the jury's verdict was supported by insufficient evidence as a matter of law and that it was against the manifest weight of the evidence. Specifically, Defendant claims that the evidence presented by the state was insufficient to prove beyond a reasonable doubt that Defendant was guilty of gross sexual imposition. We find that Defendant's assertions lack merit.
 {¶ 20} As an initial matter, this Court notes that the sufficiency and manifest weight of the evidence are legally distinct issues. State v.Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at ¶ 23, citing Statev. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its burden of production at trial, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3.
 {¶ 21} A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law. Thompkins,78 Ohio St.3d, at 386. In reviewing a challenge to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Clemons (1998), 82 Ohio St.3d 438,444, citing Jenks, 61 Ohio St.3d at 273.
 {¶ 22} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Gulley, supra, at 3, citing Thompkins, 78 Ohio St.3d at 390. (Cook, J., concurring). When a defendant maintains that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 23} This court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility. Sykes Constr. Co. v. Martell
(Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038, at 5-6.
 {¶ 24} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) Statev. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. CuyahogaFalls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19374 and 19735, at 5.
 {¶ 25} Defendant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(1). To convict Defendant of gross sexual imposition in this case, the State must have proven that he purposefully compelled the victim to submit to sexual contact by force or threat of force. R.C.2907.05(A)(1). This Court does not find that the jury acted against the manifest weight of the evidence in finding Defendant guilty of gross sexual imposition.
 {¶ 26} Sexual contact is defined by R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." There is no requirement that there be direct testimony regarding sexual arousal or gratification. See In re Anderson (1996),116 Ohio App.3d 441, 444. In the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer from the evidence that Defendant's purpose was such from the "type, nature and circumstances of the contact, along with the personality of the defendant." State v. Cobb (1991), 81 Ohio App.3d 179, 185.
 {¶ 27} "If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." Id. In this case, the trier of fact determined that Defendant was motivated by sexual arousal or gratification when he would molest his stepdaughter, masturbate while at the foot of her bed, and when he put his penis on her arm. The evidence supports the jury's finding; therefore, it is not against the manifest weight of the evidence in this respect.
 {¶ 28} Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(A)(1). It is not necessary for those who hold a position of authority over a child to use any explicit threats or displays of force.Eskridge, 38 Ohio St.3d at 59. `"[W]ith filial obligation of obedience to parent,' the same degree of force and violence may not be required upon a child as would be required where both perpetrator and victim are adults." (Citations omitted.) State v. Lee, 10th Dist No. 02AP-1340, 2003-Ohio-4059, at ¶ 50.
 {¶ 29} As discussed above, the victim was molested by her step-father before she reached the age of majority. She testified that she was scared and would try to move around to get him to stop. Defendant pulled down her covers, moved her underwear and digitally violated her on at least three occasions. He would enter her room approximately four times a week and either fondle her under her clothing, or masturbate while watching her. Once he placed his penis on her arm. The victim was scared to say anything because Defendant was supposed to be her father and she did not want to upset her mother or cause the family to split up
 {¶ 30} Based on the testimony considered in Defendant's first assignment of error, we find that, when viewed in the light most favorable to the prosecution, the evidence that Defendant used force is sufficient and consistent with the manifest weight of the evidence. We cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found defendant guilty of gross sexual imposition.
 {¶ 31} In a jury trial, matters of credibility of witnesses are primarily for the trier of fact, therefore, we must give deference to the jurors' judgment. See State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13; State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence offered by the prosecution. State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. See, also, State v. Warren (1995),106 Ohio App.3d 753, 760. The evidence persuades us that the jury neither lost its way nor created a manifest miscarriage of justice in convicting Defendant of gross sexual imposition.
 {¶ 32} Having found above that the weight of the evidence supports Defendant's conviction, any issues concerning sufficiency of the evidence must be similarly disposed of. See Roberts, supra, at 8. Accordingly, Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"The trial court abused its discretion by allowing the prosecution to introduce, pursuant to Evid.R. 404(B) and R.C. 2945.59, testimony concerning another crime, wrong or act, in the absence of substantial proof that the alleged other act was committed by Defendant."
 {¶ 33} In his third assignment of error, Defendant maintains that the court abused its discretion by allowing the victim's sister to testify that Defendant had committed a similar crime on her. We disagree.
 {¶ 34} We review the trial court's decision to admit the evidence introduced by the victim's sister (sister) under an abuse of discretion standard. See State v. Apanovitch (1987), 33 Ohio St.3d 19, 22.
 {¶ 35} The trial court permitted sister to testify that during an eight day family vacation to Niagra Falls, Defendant had come to her bed at night and reached under her shirt and tried to fondle her breasts. Sister testified that she turned over on her side so he could not go any further. When she turned around, he stopped and went back to his own bed.
 {¶ 36} Evid. R. 404(B) provides that "evidence of other crimes, wrongs, or acts * * * may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See, also, R.C.2945.59. In this case, evidence that sister was molested by Defendant was relevant to show a scheme, plan or system. The court found similarities between sister's and the victim's accounts of molestation. For both sisters, the offenses occurred late at night when Defendant thought that they would be sleeping, and for both victims the molestation occurred in a similar manner.
 {¶ 37} The court indicated that the evidence given by sister was to be considered only for the limited purpose of demonstrating "Defendant's motive, scheme, plan, intent, system, or preparation to commit the acts in [the victim's] event." The court told the jury that sister's testimony "can't be used for you for any other purpose." We find that the trial court did not abuse its discretion in admitting sister's testimony into evidence for the limited purpose of demonstrating Defendant's plan or scheme. Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"The trial court erred in sentencing Defendant to more than the minimum prison term, where he had not previously served a prison term and where the sentencing guidelines mitigated against such a prison sentence."
 {¶ 38} In his fourth and final assignment of error, Defendant claims that the trial court erred in imposing a prison term that was more than the minimum term since he had not previously served a prison term and since the sentencing guidelines mitigated against such a sentence. We disagree.
 {¶ 39} Defendant, a first time offender, was given a seventeen month prison term on the three counts of gross sexual imposition. Under R.C.2929.14(A)(4), Defendant could have been sentenced to a minimum of six months or a maximum of eighteen months for his fourth degree gross sexual imposition conviction. Defendant maintains that "[u]nder R.C. 2929.14(B), there is a sentencing presumption that a convicted defendant who has not previously served a prison term will receive the shortest prison term authorized by R.C. 2929.14(A)." We disagree. The Supreme Court of Ohio held that, "pursuant to R.C. 2929.14(B), when imposing a nonminimum sentence on a first [time] offender, a trial court is required to make its statutorily sanctioned findings on the record at the sentencing hearing." State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 26.
 {¶ 40} An appellate court reviews a sentence to determine whether the trial court complied with the statutory mandates of R.C. Chapter 2929.State v. Yeager, 9th Dist. Nos. 21092 and 21107, 2003-Ohio-1809, at ¶ 5. Therefore, we will not disturb a trial court's sentencing decision unless we find by clear and convincing evidence that the sentence is not supported by the record or is contrary to the law. State v. Harrold, 9th Dist. No. 21797, 2004-Ohio-4450, at ¶ 13. "Clear and convincing evidence is that evidence `which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" Id., quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 41} R.C. 2929.14(B) provides that:
"if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
"(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
"(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
R.C. 2929.14(B) does not require the court to give its reasons for finding that the seriousness of the offense will be demeaned or that the public not adequately protected if a minimum sentenced is imposed. Statev. Edmonson (1999), 86 Ohio St.3d 324, syllabus.
 {¶ 42} In this case, the trial court stated that it considered a number of factors in imposing a more than minimum prison term, including that Defendant showed absolutely no remorse, the victim was under eighteen, the victim suffered serious psychological harm as a result of Defendant's actions, and the nature of the relationship between the victim and the Defendant. Upon reviewing the above factors on the record, the court stated that it found that the minimum term would demean the seriousness of the offense and would not adequately protect the public.
 {¶ 43} Based on the above, we find that the trial court complied with the statutory requirements of R.C. Chapter 2929. Defendant's fourth assignment of error is overruled.
 {¶ 44} We overrule Defendant's assignments of error and affirm the judgment of the Medina County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Boyle, J., Concur.