DECISION AND JOURNAL ENTRY
{¶ 1} Defendants/Appellants, Artistic Pools, Inc. ("Artistic") and Robert Parks, Sr. ("Parks"), appeal a judgment in favor of Plaintiffs/Appellees, Rick and Leslie White ("the Whites"), in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} This action arose after the Whites entered into a contract with Artistic, through its sole shareholder, Parks, for construction of an in-ground swimming pool at their home in Munroe Falls, Ohio. The contract was signed on September 24, 1998. Construction began in October 1998, and the pool was completed in April 1999. From the time the pool was completed, the pool leaked and was not repaired in a manner satisfactory to the Whites. On March 3, 2005, [1] the Whites filed a complaint, and the matter was tried to a jury on August 28, 2007. The jury returned a verdict in favor of the Whites in the amount of $45,000.00 on their *Page 2 
breach of contract claim and $15,000.00 on their Ohio Consumer Sales Practices Act ("CSPA") claim, which amount the trial court trebled. The trial court also awarded attorney fees to the Whites in the amount of $44,170.72.
 {¶ 3} Artistic and Parks timely appealed the judgment and raise two assignments of error.
 Assignment of Error No. I "The trial court erred by instructing the jury under the Consumer Sales Practice Act (`CSPA') that acts of corporate representatives should be imputed to a shareholder, regardless of any participation of that shareholder in violation of this Court's prior ruling in Inserra v. J.E.M. Building Corporation, et al, 2000 WL 1729480
(Ohio App. 9 Dist.)." (Emphasis sic.)
 {¶ 4} In their first assignment of error, Artistic and Parks argue that the trial court improperly instructed the jury as follows:
 "The act of the employees or agents of the defendant corporation, Artistic Pools, Incorporated, are acts or conduct that is imputed to Defendants."
Artistic and Parks maintain that this instruction is erroneous because it is in contravention of Inserra v. J.E.M. Bldg. Corp. (Nov. 22, 2000), 9th Dist. No. 2973-M, in which this Court held that if an individual shareholder commits a violation of the CSPA on behalf of the corporation, the shareholder can be personally liable for the damages caused by his own acts. Id. at *5. Artistic and Parks maintain that since there was no evidence that Parks took any action related to the Whites' pool beyond negotiating the contract, it was erroneous for the trial court to instruct the jury that they could find Parks liable for conduct related to the Whites' complaints about the construction of their pool.
 {¶ 5} "The specific language of a jury instruction is within the discretion of the trial court." Ponder v. Kamienski, 9th Dist. No. 23270, 2007-Ohio-5035, at ¶ 5, citing Toth v. Oberlin Clinic, Inc., 9th Dist. No. 01CA007891, 2002-Ohio-2211, at ¶ 44. "We review such a decision *Page 3 
under an abuse of discretion standard." Van Scyoc v. Huba, 9th Dist. No. 22637, 2005-Ohio-6322, at ¶ 6, citing State v. Clay, 9th Dist. No. 04CA0033-M, 2005-Ohio-6, at ¶ 5. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the court that is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621
 {¶ 6} "[A]n appellate court reviews the [jury] instructions as a whole. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." (Internal citations omitted.) Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 410.
 {¶ 7} We initially note that Artistic and Parks concede that they did not object to the jury instruction. "Absent plain error, a party [forfeits] any challenge to jury instructions in a civil case unless that party `objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.'" Patio Enclosures, Inc. v. Four Seasons MarketingCorp., 9th Dist. No. 22458, 2005-Ohio-4933, at ¶ 70, quoting Civ. R. 51(A). "Where a party has forfeited an objection by failing to raise it, the objection may still be assigned as error on appeal if a showing of plain error is made." In re L.A.B., 9th Dist. No. 23309, 2007-Ohio-1479, at ¶ 17, appeal allowed 114 Ohio St.3d 1478, 2007-Ohio-3699, quotingState v. Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at¶ 9, quoting State v. McKee (2001), *Page 4 93 Ohio St.3d 292, 299 fn. 3 (Cook, J., dissenting). Because Artistic and Parks failed to object to the challenged jury instruction, and have asserted that the instruction was plainly erroneous, we must determine if the instruction, as part of the instructions as a whole, constituted plain error.
 {¶ 8} A plain error is one that is "obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." Schade v. Carnegie Body Co. (1982),70 Ohio St.2d 207, 209. Plain error occurs "when, but for the error, the outcome of the trial clearly would have been otherwise." Doyle v. Fairfield MachineCo., Inc. (1997), 120 Ohio App.3d 192, 214, quoting In re Colvin (June 6, 1994), 4th Dist. No. 93CA30, at *2. As we stated in PatioEnclosures,.
 "In civil matters, `the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself
 ***
 "The plain error doctrine should not be applied to reverse a civil judgment in order to allow the presentation of issues which could have easily have been raised and determined in the initial trial." (Emphasis and citations omitted.) Patio Enclosures at ¶ 71-72, citing Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus and 122.
 {¶ 9} Artistic and Parks have failed to demonstrate exceptional circumstances exist here. Artistic and Parks are alleging that the instruction quoted above, to which it had opportunities to object, constituted plain error because it allowed the jury to award damages against Parks for conduct of other Artistic employees. However, the trial court also instructed the jury that "[i]n order to find Artistic Pools and Robert Parks, Sr. liable under the Ohio Consumer Sales Practices Act, you must find by the greater weight of the evidence that the defendants engaged in an unfair and deceptive act." Thus, the trial court expressly instructed the *Page 5 
jury that in order to find Parks liable, it must find that Parks engaged in an unfair and deceptive act.
 {¶ 10} Moreover, the jury followed the trial court's instructions with regard to Parks because its damages award was substantially based upon the conduct of Parks related to the contracting process and the obligations therein. The jury awarded $15,000.00 in CSPA damages as follows:
 "(A) Failure to include in the written sales contract all the material represented prior to the agreement. $2,500.00
 "(B) Misrepresent the terms of the contract (one sided in favor of the supplier)[.] $2,500.00
 "(C) Failure to honor the warranty that was expressed or [i]mplied[.] $7,500.00
 "(D) failure to honor a legal obligation[.] $2,500.00"
 {¶ 11} Considering the jury instructions as a whole, we cannot say that, but for the allegedly erroneous jury instruction, the outcome of the case would have been different. The trial court's jury instruction was not plainly erroneous and Artistic and Parks' first assignment of error is overruled.
 Assignment of Error No. II "The trial court erred in awarding [the Whites] $45,000.00 on the breach of contract claim as said award is not supported by competent, credible evidence."
 {¶ 12} In their second assignment of error, Artistic and Parks argue that the jury award of $45,000.00 in damages for their breach of contract is against the manifest weight of the evidence. Specifically, Artistic and Parks argue that there was no evidence to establish that only complete replacement of the swimming pool, at a cost of $45,000.00, was required in this case. Artistic and Parks argue Terrence Brennan testified that a new pool would cost $45,000.00, but that the new pool would not be the same type of pool as the Whites' original pool. Artistic and Parks *Page 6 
also note that the testimony of the Whites' expert, Jerry Borkholder, established that re-caulking of the pool might have repaired the problem. Finally, Artistic and Parks maintain that the only evidence to support the conclusion that the only remedy was complete replacement of the swimming pool was Borkholder's conclusion that he would replace the pool if it belonged to him. Artistic and Parks assert that there is no evidence given to a reasonable degree of scientific certainty that the pool should be replaced.
 {¶ 13} "When applying a civil manifest-weight-of-the-evidence standard, a court of appeals should affirm a trial court when the trial court's decision `is supported by some competent, credible evidence.'"Bryan-Wollman v. Domonko (2007), 115 Ohio St.3d 291, 2007-Ohio-4918, at ¶ 3, quoting State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 32.
 {¶ 14} We initially note that Artistic and Parks failed to object to the testimony and opinions of Brennan or Burkholder at trial on any basis.
 {¶ 15} Brennan testified that he was employed by High-Tech Pools in the sales and estimating department and had been in such role for seven and one-half years. Brennan testified that the Whites contacted High-Tech to get an estimate to replace their pool. Brennan explained that he was not asked to look at the pool for repair purposes. Brennan testified that he gave the Whites an estimate of $45,000 to replace their pool. Brennan explained that this price was just a base price and did not include utility hook-up, brickwork along the top pool wall ($2,552), pool deck ($2,196), pool safety cover ($14,000), or a winter cover ($21,000).
 {¶ 16} Borkholder testified that he was retired from the pool business after 30 years. Borkholder stated that he began testifying as an expert witness in court cases in 1995, and was engaged by the Whites as an expert in this case. Borkholder testified to a reasonable degree of scientific certainty that Artistic did not comply with the minimal industry standards when it *Page 7 
installed the Whites' pool. Borkholder indicated that the stone underneath the concrete floor of the pool was insufficient in quantity and not the correct type of stone. Borkholder explained that because of this, the hydrostatic groundwater pressure would cause issues with the floor of the pool, which could not be alleviated with the installation of a hydrostatic relief valve. Borkholder testified as to other problems with the pool, including, but not limited to irregular caulking, pipes that were dry-fit instead of glued, and the use of the wrong type of tubing for the pressure line to the pool. Borkholder also testified that it is possible to have a leak in a pool and be unable to identify its source. Borkholder finally testified that the "pool has serious problems and is going to continue to have serious problems. I see no way of easily fixing the biggest ones. *** I would replace it." Borkholder testified that he would not spend the time or money to find the leaks because "there are too many other potentials for leaks that may have not developed at this point *** you're spinning your wheels." On cross-examination, Artistic did not challenge Borkholder's opinion that he would replace the pool.
 {¶ 17} Finally, Parks, the sole shareholder of Artistic, testified that Artistic responded to the Whites' complaints by attempting to repair any problems, but that the Whites still believed there was a leak in the pool. Parks did not testify as to damages.
 {¶ 18} Based on the foregoing, the damages award is supported by competent, credible evidence. Borkholder's opinion that the pool needed to be replaced was not challenged. Neither was Bronner's opinion as to the cost of the replacement challenged. Moreover, the jury award was not tested by way of interrogatories. Thus, we cannot determine the basis for the jury's award of $45,000, which amount did not include all of the costs set forth in Bronner's estimate.
 {¶ 19} Artistic's and Parks' second assignment of error is overruled. *Page 8 
 {¶ 20} Artistic's and Parks' assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellants.
WILLIAM R. BAIRD FOR THE COURT
MOORE, P. J. DICKINSON, J., CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.)
[1] The Whites' original complaint was filed on June 28, 2002, but was dismissed without prejudice on July 2, 2004.