DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Mitchell Reinhardt, appeals his conviction for gross sexual imposition. This Court affirms.
 {¶ 2} In November 2005, the Medina County Department of Job and Family Services received a "call of concern" regarding the suspected sexual abuse of Defendant's four-year-old niece, K.R. Defendant was indicted on charges of rape, in violation of R.C. 2907.02(A)(1)(b), and gross sexual imposition, in violation of R.C. 2907.05(A)(4). A jury acquitted Defendant of rape, but found him guilty of gross sexual imposition, and the trial court sentenced him to a two-year prison term. Defendant timely appealed. His assignments of error are rearranged for ease of disposition.
 ASSIGNMENT OF ERROR II "The trial court erred and abused its discretion, over the objection of the defendant, by finding a six (6) year old child competent to testify." *Page 2 
 {¶ 3} Defendant's second assignment of error is that the trial court abused its discretion by determining that K.R. was competent to testify. Specifically, he has argued that K.R. could not accurately perceive facts and testify accordingly, accurately recall impressions of fact, communicate clearly and consistently, articulate the difference between truth and falsehood, and appreciate the gravity of testifying truthfully.
 {¶ 4} Children under ten years of age who are incapable of receiving accurate impressions of the subject matter that is the basis of their testimony or of relating their impressions are not competent as witnesses. Evid. R. 601(A). This is not to say, however, that child witnesses are incompetent in every instance, and the trial court is responsible "to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them." State v. Frazier (1991),61 Ohio St.3d 247, 251. Trial courts must consider five factors to determine whether a child witness is competent to testify: "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." Id. at syllabus. Because trial courts have the ability to view the demeanor of a child witness during voir dire, a competency determination is reviewed for abuse of the trial court's discretion. See State v.McNeill (1998), 83 Ohio St.3d 438, 443.
 {¶ 5} In this case, the trial court conducted a voir dire of K.R. after clearing the courtroom of spectators. K.R., who stated that she was six years old, was able to tell the court that she was in kindergarten, to identify her school by name, and to recognize that it was located in Wadsworth. She also stated that she attended school only in the morning and expressed *Page 3 
understanding that her statement meant that she finished class at lunchtime. Although initially unable to identify her "date of birth," she answered accurately when the trial court later rephrased the question and asked, "What is your birthday?" She described the members of her household and the age of her older sister. K.R. stated that she had recently learned numbers in kindergarten and could count to twenty, but declined to demonstrate for the trial court. Although K.R. did not identify specific examples of activities that she shared with her family other than "eating," she stated that she enjoyed playing with crayons and watching cartoons. In that respect, she expressed understanding that the cartoon character SpongeBob is not real. In response to the trial court's inquiry about the nature of a promise, K.R., explained that "[y]ou cannot lie" and that a lie is "[n]ot telling the truth." She explained that one will "get in big trouble" for telling a lie and stated that she had gotten into trouble for lying to her mother "a long time ago." K.R. said that no one had told her what to say in court.
 {¶ 6} In a sidebar during the voir dire, the trial court judge expressed his initial impression that K.R. seemed "pretty self-confident and even articulate," but expressed concern "about her ability to recollect things." On further examination, K.R. stated that she had lived with her grandmother and Defendant a "[l]ong time ago," but that she remembered doing things with Defendant that were fun. As an example, K.R. said that they played with "magnet toys" and built a house out of blocks. She recognized the difference between building the toy house and building a "real house," stated that movies are real "sometimes," and said that the television character Barney is not real. K.R. accurately described the colors worn by those in the courtroom during the voir dire. Having concluded this additional examination, the trial court expressed some concern about K.R.'s memory with regard to time, but concluded that it did not rise to a level that would disqualify her as a witness. *Page 4 
 {¶ 7} The voir dire of K.R. demonstrated that she was able to perceive, remember, and communicate impressions of fact; that she understood the difference between truth and falsity and, particularly, the difference between the real and the imaginary; and that she grasped the importance of speaking truthfully. See McNeill,83 Ohio St.3d at 442. The trial court did not abuse its discretion in determining that K.R. was competent to testify, and Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "The trial court erred in permitting expert testimony upon facts or data not perceived by the witness nor admitted into evidence at the trial in violation of Ohio Evidence Rule 703, over the objection of counsel in some instances and under a plain error analysis in every instance."
 {¶ 8} Defendant's third assignment of error challenges the testimony of four witnesses whom he characterizes as experts: Ana Becker, a social worker employed as an intake investigator for the Medina County Department of Job and Family Services; Amy Kerr of the Medina Police Department; and Gregory Pollack and Suzanne LeSure, who provided counseling services to K.R. after the alleged abuse came to light. Defendant argues that each witness testified in violation of Evid. R. 703 by basing his or her opinion testimony on facts neither perceived by the expert nor admitted in evidence through the testimony of fact witnesses at trial.
 {¶ 9} A witness testifies as an expert when the subject matter of the testimony is related to matters that are beyond the knowledge or experience of laypersons; the witness possesses "specialized knowledge, skill, experience, training or education" that relate to the subject matter; and the witness testifies based on "reliable scientific, technical, or other specialized information." Evid. R. 702. Fact witnesses, on the other hand, testify with respect to matters relevant to the case and within their personal knowledge. See Evid. R. 402; Evid. R. 602. Persons who may qualify as an expert in certain circumstances may be called at other times as fact *Page 5 
witnesses to testify as to matters within their knowledge. See, e.g.,Vance v. Marion Gen. Hosp., 165 Ohio App.3d 615, 2006-Ohio-146, at ¶ 11; Walker v. Holland (1997), 117 Ohio App.3d 775, 782-83;Covington v. Sawyer (1983), 9 Ohio App.3d 40, 45.
 {¶ 10} The witnesses identified by Defendant in this assignment of error testified not as experts but as fact witnesses. Ana Becker, a social worker, testified that she received a report of suspected abuse regarding K.R., which she referred to the Medina Police Department. Officer Amy Kerr testified that she investigated the allegations after Ms. Becker's referral. Greg Pollack testified that he provided counseling services to K.R. after the allegations surfaced and described her diagnosis and treatment. Dr. Suzanne LeSure testified that she counseled K.R. after her period of treatment with Mr. Pollack, and Dr. LeSure also testified regarding her diagnosis and treatment. Because these witnesses testified regarding facts within their knowledge rather than as experts, Evid. R. 703 does not apply. Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "The trial court erred, over the objection of defendant, in permitting an officer to testify as to statements of the child made during [the] investigative interview."
 {¶ 11} Defendant's fourth assignment of error is that the trial court incorrectly permitted Officer Amy Kerr to testify regarding statements made by K.R. during the investigation into the allegations against Defendant. Specifically, Defendant has argued that K.R.'s statements were testimonial in nature and, by implication, that the admission of Officer Kerr's testimony regarding those statements violated Defendant'sSixth Amendment right to confront witnesses against him. We disagree.
 {¶ 12} The Sixth Amendment to the United States Constitution guarantees an accused the right to confront witnesses against him.Crawford v. Washington (2004), 541 U.S. 36, 54. Testimonial statements made by a witness may only be admitted when the declarant is *Page 6 
unavailable and the defendant has previously been afforded the opportunity for cross-examination. Id. at 59. Conversely, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. *** The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." Id. at 59, fn.9. See, also, State v. Taylor, 9th Dist. No. 06CA009000,2008-Ohio-1462, at ¶ 42; State v. Velez, 9th Dist. No. 06CA008997,2007-Ohio-5122, at ¶ 33.
 {¶ 13} We do not need to reach the issue of whether K.R.'s out-of-court statements during her interview with Ms. Becker and Officer Kerr were testimonial in nature because Defendant's fourth assignment of error fails for a more basic reason. As we concluded in connection with Defendant's second assignment of error, the trial court did not err in finding K.R. competent to testify. She testified at trial and was subject to cross-examination. Because Defendant had the opportunity to confront K.R. as a witness against him, Confrontation Clause concerns are not implicated by Officer Kerr's testimony regarding K.R.'s out-of-court statements. See Velez, 2007-Ohio-5122, at ¶ 33. Defendant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR I "The conviction was against the manifest weight of the evidence and based upon insufficient evidence."
 {¶ 14} Defendant's first assignment of error argues that his conviction for gross sexual imposition was based on insufficient evidence because the State failed to present evidence establishing that the offense was committed in Medina County. He also maintains that his conviction is against the manifest weight of the evidence, arguing that the jury lost its way by concluding that he touched K.R. for purposes of sexual arousal or gratification. *Page 7 
 {¶ 15} Venue must be proved in every criminal case beyond a reasonable doubt and may be established by "all the facts and circumstances" in a given case. State v. Headley (1983), 6 Ohio St.3d 475, 477. When a defendant challenges the sufficiency of evidence demonstrating venue, this Court assesses the evidence to determine whether such evidence, if believed, would convince the average mind that venue was proper in the county in which the trial was held. See State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus; State v. Blough (Apr. 7, 1999), 9th Dist. No. 19143, at *3. In making this determination, we must view the evidence in the light most favorable to the prosecution.State v. Feliciano (1996), 115 Ohio App.3d 646, 653, quotingJenks at paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 16} As a general rule, venue lies in any county "in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A). R.C. 2901.12(B) recognizes the practical difficulty in proving venue when an offense is committed in an automobile in transit and provides that in that situation, when "it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in any jurisdiction through which the *** motor vehicle *** passed." To establish that venue was proper under R.C. 2901.12(B), therefore, this court must determine whether, viewing the evidence in the light most favorable to the prosecution, the State demonstrated that an offense was committed in an automobile in transit and that the automobile passed through the county in which the trial was held. SeeBlough at *3.
 {¶ 17} The State adduced testimony at trial that the criminal act against K.R. occurred in an automobile while Defendant was driving and K.R. was seated in the passenger seat. Witnesses testified that Defendant lived with his mother at a residence in Medina County where *Page 8 
he provided childcare for K.R. while her mother worked during the day. Testimony also indicated that K.R. and her mother lived at another residence in Medina County and that her mother worked for a real estate business in Medina County during the time in question. According to a detective who interviewed K.R. about the allegation of abuse, the incident occurred during the day while her mother was working and while K.R. was in Defendant's care. K.R.'s mother, Mandi Reinhardt, testified that her daughter's disclosure happened suddenly after a day spent in Defendant's care. On that date, she testified, Defendant picked her up from work at a Smythe Cramer real estate office located on "Medina Road in the Western Reserve Building." Ms. Reinhardt recalled that Defendant was driving and that K.R. was seated in the front seat. She testified that once Defendant dropped them off at their Northland Drive residence, K.R. began coloring almost immediately and disclosed the incident to Ms. Reinhardt while doing so.
 {¶ 18} Viewing this evidence in a light most favorable to the prosecution, one could conclude that the beginning and ending points of the automobile's travel, at minimum, occurred in Medina County. This suffices to establish venue under R.C. 2901.12(B). See, e.g., State v.Malterer (Aug. 21, 1987), 5th Dist. No. 86AP100071, at *2 (concluding that a rape conviction was supported with sufficient evidence demonstrating venue when the victim could identify the beginning and ending points of an automobile's travel, but did not know in what county the defendant stopped the car and committed a sexual assault.)
 {¶ 19} Defendant argues that venue was not proven in this case because there was no evidence to establish where his vehicle was located when the offense against K.R. was committed. R.C. 2901.12(B) does not require the State to prove the location of the vehicle when the offense itself was committed, however, and to read R.C. 2901.12(B) so narrowly renders it *Page 9 
meaningless. When the locations at which the elements of a criminal offense occurred can be established, the state may prove venue pursuant to R.C. 2901.12(A). When more than one offense constitutes a course of conduct across jurisdictions and the location of each can be identified, the state may proceed under R.C. 2901.12(H). It is precisely because R.C. 2901.12(B) applies when "it cannot reasonably be determined in which jurisdiction the offense was committed" that the statute has meaning. (Emphasis added.) Under Defendant's interpretation of the statute, in contrast, venue could always be proved under R.C. 2901.12(A) if provable under R.C. 2901.12(B), but there would be no recourse for prosecuting offenders when the scene of the crime cannot be identified with precision. This Court declines to read R.C. 2901.12(B) so restrictively.
 {¶ 20} Defendant also argues that his conviction for gross sexual imposition is against the manifest weight of the evidence and was supported by insufficient evidence because the testimony at trial did not establish that he touched K.R. for the purpose of his own sexual gratification. Defendant has argued that, in the context of his relationship with K.R., it was not reasonable for the jury to conclude that a single touch involving either K.R.'s buttocks or vaginal area was for the purpose of sexual gratification.
 {¶ 21} When a defendant asserts that his conviction is against the manifest weight of the evidence, this Court does not view the evidence in the light most favorable to the State, but:
 "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Because sufficient evidence is *Page 10 
required to take a case to the jury, the conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 22} R.C. 2907.05(A)(4) prohibits sexual contact with a person under thirteen years of age, "whether or not the offender knows the age of that person." Sexual contact means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Sexual gratification may be inferred by the trier of fact from the "type, nature and circumstances of the contact, along with the personality of the defendant," and direct testimony regarding sexual gratification is not required. State v. Clay, 9th Dist. No. 04CA0033-M,2005-Ohio-6, at ¶ 26, quoting State v. Cobb (1991), 81 Ohio App.3d 179,185.
 {¶ 23} The facts and circumstances of this case lead us to conclude that the jury did not lose its way in finding Defendant guilty of gross sexual imposition. K.R., who was four years old at the time of the incident, testified that Defendant touched her "butt" while they were riding in a car driven by Defendant. She stated that she was wearing a diaper at the time, but also testified that she knew the difference between good and bad touches and that Defendant touched her in a bad way. Afterward, according to K.R., Defendant stated that "it tasted good." K.R. also testified that Defendant sometimes removed her from her grandmother's bed and took her to bed with him and that she took showers with Defendant. Gregory Pollock, who provided counseling to K.R., testified that the child disclosed the incident to him, and his recollection of her disclosure was substantially similar to K.R.'s own testimony. Dr. Suzanne LeSure, who also provided counseling to K.R., testified that she observed patterns of behavior from the child, *Page 11 
including anxiety regarding toileting and fear of wearing "big girl pants" that K.R. attributed to Defendant. Dr. LeSure also recalled K.R.'s disclosure of abuse, and as with Mr. Pollack, her testimony was consistent with K.R.'s own.
 {¶ 24} Defendant's position at trial was that even assuming an incident of touching occurred, it was nonsexual in nature and happened in the course of his care for K.R. Along those lines, K.R.'s mother, Mandi Reinhardt, testified that Defendant provided childcare while she worked a variety of jobs and "did everything" for her daughter, including changing her diapers. Ms. Reinhardt denied that Defendant was ever given suppositories to administer to K.R. for persistent constipation, which contradicted the testimony of Defendant's and Ms. Reinhardt's mother, Sherrell Reinhardt. Sherrell Reinhardt also testified that Defendant bathed with K.R. on occasions in the past, but that she asked him to stop doing so when it became "kind of inappropriate" because of K.R.'s age. Sherrell denied that Defendant had taken K.R. from her bed during the night and that he had harmed K.R. at any time. She also testified regarding a strong bond between K.R. and Defendant that continued even after the incident of touching was disclosed.
 {¶ 25} Having reviewed the testimony presented at trial and the reasonable inferences that can be drawn therefrom, this Court cannot conclude that the jury lost its way in finding that Defendant engaged in sexual contact with K.R. for the purposes of sexual gratification. K.R.'s disclosures were consistent with her testimony at trial, including the detail of Defendant's statement afterward, which this Court considers of particular significance. K.R. demonstrated an understanding of good and bad touching and disclosed a single incident, tending to support the State's position that the touching did not occur in the course of routine childcare by Defendant. Defendant's conviction for gross sexual imposition is not against the manifest weight of the *Page 12 
evidence. Having reached this conclusion, this Court determines that his conviction is also supported by sufficient evidence. SeeRoberts at *2. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR V "The trial court erred when it applied Ohio's new Adam Walsh Act, Senate Bill 10, to appellant and ordered appellant to register as a tier two sex offender for twenty-five years with periodic verification every 180 days in violation of the Ohio and Federal Constitutions."
 {¶ 26} Defendant's final assignment of error is that his classification as a tier two sex offender pursuant to the Adam Walsh Act violates the prohibitions against ex post facto and retroactive laws provided in the United States and Ohio Constitutions; violates the doctrine of the separation of powers set forth in the Ohio Constitution; and violates his right to be free from double jeopardy.
 {¶ 27} This Court has previously considered and rejected several of Defendant's constitutional arguments. See State v. Honey, 9th Dist. No. 08CA0018-M, 2008-Ohio-4943 (concluding that the Adam Walsh Act does not violate the prohibitions against ex post facto and retroactive laws). We now conclude that his double jeopardy and separation of powers arguments are also without merit.
 {¶ 28} In State v. Williams (2000), 88 Ohio St.3d 513, the Supreme Court of Ohio rejected the argument that an earlier version of R.C. Chapter 2950 placed defendants in double jeopardy. Id. at 528. Citing its previous decision in State v. Cook (1998), 83 Ohio St.3d 404, the Court concluded that, "[b]ecause Cook held that R.C. Chapter 2950 is neither `criminal,' nor a statute that inflicts punishment, R.C. Chapter 2950 does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions." Williams at 528. This Court has reached a similar conclusion with respect to the current version of R.C. Chapter 2950. See Honey at ¶ 12-19. On *Page 13 
that basis, we conclude that application of the Adam Walsh Act does not place an offender in double jeopardy. See Williams at 528.
 {¶ 29} Nor does the Adam Walsh Act violate the separation of powers doctrine. As the Supreme Court of Ohio has explained:
 "The separation-of-powers doctrine implicitly arises from our tripartite democratic form of government and recognizes that the executive, legislative, and judicial branches of our government have their own unique powers and duties that are separate and apart from the others. The purpose of the separation-of-powers doctrine is to create a system of checks and balances so that each branch maintains its integrity and independence." (Internal citations omitted.) State v. Thompson (2001), 92 Ohio St.3d 584, 586.
While "the General Assembly is vested with the power to make laws," the courts possess exclusive power to exercise judicial functions without being "directed, controlled or impeded therein by other branches of the government." Id. at 586. The classification of sex offenders, however, is a creature and mandate of the legislature that does not implicate the inherent power of the courts. State v. Bodyke, 6th Dist. Nos. H-07-040, H-07-041, H-07-042, 2008-Ohio-6387, at ¶ 22. For this reason, several courts of appeals have concluded that the Adam Walsh Act does not violate the separation of powers doctrine. See State v. Messer, 4th Dist. No. 08CA3050, 2009-Ohio-312, at ¶ 23-26; In re A.R., 5th Dist. No. 08-CA-17, 2008-Ohio-6581, at ¶ 34; State v. Williams, 12th Dist. No. CA2008-02-029, 2008-Ohio-6195, at ¶ 99-102; State v. Byers, 7th Dist. No. 07CO39, 2008-Ohio-5051, at ¶ 73-74; In re Smith, 3d Dist. No. 01-07-58, 2008-Ohio-3234, at ¶ 39. This Court agrees with the rationale offered by other districts and concludes that the Adam Walsh Act does not violate the separation of powers doctrine. Defendant's fifth assignment of error is overruled.
 {¶ 30} Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed. *Page 14 
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
WHITMORE, J. MOORE, P. J. CONCUR *Page 1