[Cite as *State v. Just*, 2012-Ohio-4094.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | | C.A. No. 12CA0002 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RONALD L. JUST | | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No. 11-CR-0213 |

DECISION AND JOURNAL ENTRY

Dated: September 10, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Ronald Just, appeals from his convictions in the Wayne County Court of Common Pleas. This Court affirms in part, and reverses in part.

I

{¶2} On May 3, 2011, A.C. wrote a note through which her mother learned their next door neighbor, Just, had sexually abused her. A.C., who was eight years old at the time, met with an intake worker from Wayne County Children Services as well as a sexual assault nurse examiner. A.C. described multiple incidents of abuse spanning over several years. According to A.C., Just sexually abused her numerous times when she and her younger sister went to his house to play. Just, who was 73 years old at the time A.C. raised these allegations, denied any wrongdoing and insisted that A.C. fabricated the abuse with the aid of her parents due to several disputes that arose between the two families.

**{¶3}** On August 8, 2011, a grand jury indicted Just on the following counts: (1) two counts of rape, in violation of R.C. 2907.02(A)(1)(b); (2) five counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4); and (3) disseminating matter harmful to juveniles, in violation of R.C. 2907.31(A)(1). A bench trial ensued and resulted in findings of guilt solely on the five counts for gross sexual imposition. The court sentenced Just to ten years in prison and classified him as a Tier II Sex Offender/Child Victim Offender Registrant.

**{¶4}** Just now appeals from his convictions and raises eight assignments of error for our review. For ease of analysis, we rearrange several of the assignments of error.

II

Assignment of Error Number Two

IT WAS PLAIN ERROR, IN VIOLATION OF RONALD JUST'S RIGHT TO DUE PROCESS, TO CONVICT HIM OF FIVE COUNTS OF GROSS SEXUAL IMPOSITION, WHERE THE COUNTS IN THE INDICTMENT WERE CARBON COPIES OF EACH OTHER, WHERE THE OFFENSES ALLEGEDLY OCCURRED OVER A BROAD SPAN OF TIME, AND WHERE THE ONLY MEANS OF DIFFERENTIATING THE COUNTS WAS BY REFERENCE TO DIFFERENT LOCATIONS.

**{¶5}** In his second assignment of error, Just argues that it was plain error for the court to convict him of five counts of gross sexual imposition. He argues that his indictment was defective because his gross sexual imposition charges were carbon copies of each other.

**{¶6}** "By failing to timely object to a defect in an indictment, a defendant waives all but plain error on appeal." *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, paragraph three of the syllabus. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the [trial] court." Crim.R. 52(B). The doctrine of plain error requires that there must be: (1) a deviation from a legal rule; (2) that is obvious, and; (3) that affects the appellant's substantial rights. *State v. Hardges*, 9th Dist. No.

24175, 2008-Ohio-5567, ¶ 9. An error affects the appellant's substantial rights if it affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

> [A] criminal offense must be charged with reasonable certainty in the indictment so as to apprise the defendant of that which he may expect to meet and be required to answer; so that the court * * * may know what [it is] to try, and the court may determine without unreasonable difficulty what evidence is admissible.

*State v. Ross*, 9th Dist. No. 09CA009742, 2012-Ohio-536, ¶ 17, quoting *Horton v. State*, 85 Ohio St. 13, 19 (1911). "The purpose of an indictment is to afford a defendant notice of the charges against him." *State v. Feliciano*, 115 Ohio App.3d 646, 658 (9th Dist.1996).

{¶7} Just's indictment charged him with five counts of gross sexual imposition against the same victim, A.C., within the same date range, January 1, 2008, to May 3, 2011. The bill of particulars indicated that all five offenses occurred at Just's address and differentiated between the counts by virtue of the specific sexual contact alleged. The five different counts alleged (1) Just forced A.C. to touch his penis and he touched her vagina; (2) Just forced A.C. to touch his penis and he touched her buttocks; (3) Just forced A.C. to touch his penis and he touched her vagina and breasts; (4) Just forced A.C. to touch his penis; and (5) Just forced A.C. to touch his penis. Therefore, with the exception of the final two counts, all of the counts alleged different combinations of sexual contact. Before the State even filed its bill of particulars, it also notified Just of the recorded interview between A.C. and the intake worker from Children Services. The recording further clarifies that the alleged instances of gross sexual imposition occurred at different locations on Just's property, including on a four wheeler, in his pond, in his bedroom, in his basement, and in his bathroom.

{¶8}   Just primarily relies upon *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005), to argue that he did not receive adequate notice of the charges against him.  In *Valentine*, the Sixth Circuit determined that the State had obtained Valentine's convictions in violation of his due process rights, based on a generic indictment that failed to differentiate between twenty counts of child rape and twenty counts of felonious sexual penetration.  *Valentine*, 395 F.3d at 628-629.  The Sixth Circuit noted that the counts in Valentine's indictment were identically worded and that the State failed to distinguish the factual bases of the charges in either a bill of particulars or at trial.  *Id.* at 628-629.  Moreover, all of the offenses occurred within the same date range.  *Id.*  Because of the complete lack of distinction between the counts, the Sixth Circuit reasoned, Valentine "could only successfully defend against some of the charges by effectively defending against all of the charges" and it would be "incredibly difficult" for the jury to consider each count independently, as they arose from indistinguishable incidents.  *Id.* at 633-634.  Accordingly, the court concluded that a due process violation had occurred and vacated all of Valentine's convictions, save for one count of rape and one count of felonious sexual penetration.  *Id.* at 638-639.  In so holding, however, the Sixth Circuit cautioned that "the constitutional error in this case is traceable not to the generic language of the individual counts of the indictment but to the fact that there was no differentiation among the counts."  *Id.* at 636.  The court specified that "[t]he due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial."  *Id.* at 634.

{¶9}   This case is distinguishable from *Valentine* because the State set forth different factual bases for the gross sexual imposition charges.  Apart from the fact that the majority of the charges arose from different types or combinations of sexual contact, A.C. described the

instances of abuse as having occurred at distinct locations. Although A.C. could not specifically recall when the abuse occurred, she described the location of the abuse and other circumstances surrounding it in detail. "It is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity." *State v. Daniel*, 97 Ohio App.3d 548, 557 (10th Dist.1994). "In many cases involving child sexual abuse, the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time." *State v. Mundy*, 99 Ohio App.3d 275, 296 (2d Dist.1994). A.C. testified that she was about five years old when Just began sexually abusing her and the abuse continued until she told her parents at the age of eight. It is unsurprising, therefore, that the State could not offer more precise dates and times for the alleged incidents of abuse. The State provided Just with as much information as was available: the specific types of sexual contact alleged to be involved and the specific locations where the contacts were alleged to have occurred. Unlike *Valentine*, the State delineated between the counts. *Compare Valentine*, 395 F.3d at 634. Based on our review of the record, we must conclude that Just has not demonstrated plain error. His second assignment of error is overruled.

<u>Assignment of Error Number Seven</u>

> THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING A.C. TO TESTIFY BECAUSE SHE WAS INCOMPETENT AND WAS NOT PROPERLY SWORN.

{¶10} In his seventh assignment of error, Just argues that the trial court abused its discretion by allowing A.C. to testify. Specifically, he argues that A.C. was not competent to testify and that the trial court failed to administer a proper oath before it allowed A.C. to testify. We disagree.

{¶11} Evid.R. 601(A) provides, in relevant part, that "[e]very person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

> In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful.

*State v. Frazier*, 61 Ohio St.3d 247 (1991), paragraph one of the syllabus. The issue of whether a child under the age of ten is competent to testify is one properly addressed to the discretion of the trial court. *State v. Reinhardt*, 9th Dist. No. 08CA0012-M, 2009-Ohio-1297, ¶ 4 ("Because trial courts have the ability to view the demeanor of a child witness during voir dire, a competency determination is reviewed for abuse of the trial court's discretion."). Accordingly, we review such competency determinations under an abuse of discretion standard of review. *Id.* *Accord State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 70-87.

{¶12} A.C. was eight years old at the time of trial. The trial court questioned A.C. before allowing her to testify and gave both attorneys the opportunity to question her as well. A.C. was able to answer basic background information, including her age, the age of her siblings, and where she lived. The court posed questions to her regarding right and wrong, and A.C. gave the court an example of something that would be a good thing to do and something that would be a bad thing to do. She also explained that there were consequences for doing a bad thing, such as going to jail or getting a "time out." Further, A.C. gave the court an example of a lie and an example of the truth. She stated that she understood she would get in trouble for not telling the truth. Based on A.C.'s responses, the trial court determined that she was competent to testify.

{¶13} We cannot conclude that the court abused its discretion by finding A.C. competent to testify. "The court's line of questioning elicited responses from [A.C.] that showed her ability to understand and tell the truth, accurately receive information, and communicate observations." *State v. Calhoun*, 9th Dist. No. 09CA009701, 2011-Ohio-769, ¶ 8. The record supports the conclusion that the court considered all the factors required of it under *Frazier* and determined, in its sound discretion, that A.C. was competent to testify. *See Frazier*, 61 Ohio St.3d at paragraph one of the syllabus. Consequently, we reject Just's argument that the court abused its discretion in its competency determination.

{¶14} We further reject Just's argument that the trial court failed to administer a proper oath before A.C. testified. After A.C.'s competency voir dire, the court stated:

> I'll just go ahead and give her the oath, then. What I'm going to do is ask you to raise your right hand. That's how we do that in court, [A.C.] and do you promise to tell the truth in everything you say in court today in your testimony[?]

A.C. responded to the court's question in the affirmative.

{¶15} Evid.R. 603 provides that "[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." Yet, the rule requires "no special verbal formula * * * for either oath or affirmation." *State v. Kincaid*, 9th Dist. Nos. 94CA005942 & 94CA005945, 1995 WL 608407, *2 (Oct. 18, 1995). Just offers no support for his assertion that the oath the trial court administered to A.C. was insufficient under Evid.R. 603. *See* App.R. 16(A)(7). A.C. demonstrated an appreciation for truthfulness, and nothing in the record suggests that she had any difficulty understanding the oath the court administered. *See Kincaid* at *2. Consequently, the trial court did not err by allowing A.C. to testify. Just's seventh assignment of error is overruled.

Assignment of Error Number Three

THE COURT ABUSED ITS DISCRETION OR OTHERWISE PREJUDICIALLY VIOLATED THE HEARSAY RULE AND THE RIGHT OF CONFRONTATION UNDER U.S. CONST. AMEND. VI, XIV, AND OHIO CONST. ART. I, SEC. 10. BY ADMITTING STATE'S EXHIBIT 4 AND SEVERAL TESTIMONIAL HEARSAY STATEMENTS AFTER THE ACCUSER HAD ALREADY BEEN CROSS-EXAMINED. PLAIN ERROR IS ASSERTED.

{¶16} In his third assignment of error, Just argues that the trial court abused its discretion by admitting State's Exhibit 4, the recording of A.C.'s interview with an intake worker from Wayne County Children Services. Just argues that the recording constitutes hearsay and also that its admission violated his rights under the Confrontation Clause.

{¶17} "A trial court possesses broad discretion with respect to the admission of evidence." *State v. Meyers*, 9th Dist. Nos. 23864 & 23903, 2008-Ohio-2528, ¶ 48, citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). Consequently, this Court applies an abuse of discretion standard when reviewing a trial court's decision to admit the statements of a child victim under the medical hearsay exception contained in Evid.R. 803(4). *See State v. Lortz*, 9th Dist. No. 23762, 2008-Ohio-3108, ¶ 18. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶18} Evid.R. 803(4) provides a hearsay exception for:

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

"Regardless of whether a child less than ten years old has been determined to be competent to testify pursuant to Evid.R. 601, the child's statements may be admitted at trial as an exception to the hearsay rule pursuant to Evid.R. 803(4) if they were made for purposes of medical diagnosis

or treatment." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, syllabus. Further, statements made for the purpose of medical diagnosis or treatment are nontestimonial and may be admitted without offending the Confrontation Clause. *Id.* at ¶ 63. *Accord State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, paragraph two of the syllabus.

{¶19} To determine whether statements are admissible under the medical diagnosis and treatment exception, a court must look to the primary purpose of the statements. *Arnold* at ¶ 28.

> The trial court's considerations of the purpose of the child's statements will depend on the facts of the particular case. At a minimum, we believe that a nonexhaustive list of considerations includes (1) whether the child was questioned in a leading or suggestive manner; (2) whether there is a motive to fabricate, such as a pending legal proceeding such as a "bitter custody battle;" and (3) whether the child understood the need to tell the physician the truth. In addition, the court may be guided by the age of the child making the statements, which might suggest the absence or presence of an ability to fabricate, and the consistency of her declarations. In addition, the court should be aware of the manner in which a physician or other medical provider elicited or pursued a disclosure of abuse by a child victim, as shown by evidence of the proper protocol for interviewing children alleging sexual abuse.

*In re I.W.*, 9th Dist. Nos. 07CA0056 & 07CA0057, 2008-Ohio-2492, ¶ 15, quoting *Muttart* at ¶ 49. If statements elicited by an interviewer were made for the primary purpose of medical diagnosis or treatment, they are nontestimonial and admissible under Evid.R. 803(4). *In re T.L.*, 9th Dist. No. 09CA0018-M, 2011-Ohio-4709, ¶ 13-15. Conversely, statements are testimonial if they "were made for investigative purposes in furtherance of criminal prosecution * * *." *Id.* at ¶ 13. The Confrontation Clause requires that a defendant have a prior opportunity to cross-examine testimonial statements. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

{¶20} Jennifer Garman testified that she is employed by Wayne County Children Services and acts as the supervisor for the intake unit assigned to sexual abuses cases. Garman interviewed A.C. at Wooster Community Hospital's Child Advocacy Center, the day after A.C. reported the abuse to her mother. Garman testified that she conducted A.C.'s interview while

Mary Ann Belanger, a sexual assault nurse examiner, observed. Garman was the only individual in the room with A.C. at the time of the interview, and Belanger was the only individual observing. Garman testified that she conducts intake interviews to aid the subsequent medical exam that will take place. Garman explained that she consults the medical examiner observing the interview before the interview ends so that she can clarify any points that will aid the examiner in the subsequent medical exam. She further explained that a mental health assessment or a referral for such an assessment is also part of the interview process.

{¶21} An interview at a child-advocacy center may serve dual purposes: one that is intended to elicit medical information for diagnosis and treatment, and one that is intended to gather forensic information for the purposes of prosecution. *Arnold*, 2010-Ohio-2742, at ¶ 33. The type of interview Garman described is virtually identical to the interview the Ohio Supreme Court considered in *Arnold*. The *Arnold* Court recognized that child advocacy centers conduct interviews with the purpose of gathering as much information as possible in a single setting to reduce the trauma child-abuse victims may suffer as a result of having to recount their abuse multiple times. *Id.* at ¶ 30-31. The interviews generally are conducted with other medical or law-enforcement personnel observing so that they can notify the interviewer of any additional questions they might need asked before the interview ends. *Id.* at ¶ 31. The medical personnel then rely on the information from the interview to conduct their subsequent medical exam. *Id.* at ¶ 32. The effect of the interview process is that the interviewer may elicit both testimonial and nontestimonial statements during the course of the interview. In those instances, the Supreme Court has held that the nontestimonial statements the child offers for purposes of medical diagnosis or treatment must be separated from the testimonial statements offered for forensic purposes. *Id.* at paragraphs one and two of the syllabus.

{¶22} The record does not support Just's assertion that virtually all of the statements Garman elicited from A.C. are testimonial in nature. A.C. described numerous instances of abuse during the interview, such as how Just forced her to touch his penis and how he touched A.C.'s body. She specified the exact locations on her body that Just touched and the locations on Just's body that he forced her to touch, as well as whether or not Just ever wore a condom during these encounters. All of A.C.'s statements to that effect were made for the purpose of medical diagnosis and treatment. *See In re T.L.*, 2011-Ohio-4709, at ¶ 17; *In re I.W.*, 2008-Ohio-2492, at ¶ 18-22.

{¶23} A.C. also made statements, however, regarding the details of the circumstances surrounding the abuse. Those statements included information that Just warned A.C. not to tell anyone what he had done, how Just took A.C. into a separate room or locked her inside his bedroom when he touched her, and how Just became mean towards her. Those statements and any statements to a similar effect were not necessary for A.C.'s medical diagnosis and treatment. Accordingly, they were testimonial in nature and subject to the Confrontation Clause. *In re T.L.* at ¶ 18; *Arnold* at ¶ 6.

{¶24} The Confrontation Clause "bars 'admission of testimonial statements of a witness *who did not appear at trial* unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" (Emphasis added.) *Davis v. Washington*, 547 U.S. 813, 821 (2006), quoting *Crawford*, 541 U.S. at 53-54. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 127, quoting *Crawford*, 541 U.S. at 59, fn. 9. Both A.C. and Garman appeared at

trial and testified. Accordingly, no violation of the Confrontation Clause occurred due to the admission of A.C.'s testimonial statements. *See State v. Simmons*, 9th Dist. No. 25275, 2011-Ohio-916, ¶ 9-10.

{¶25} Because several of A.C.'s statements were testimonial and not elicited for purposes of medical diagnosis or treatment, it follows that the same statements were not admissible under the hearsay exception for medical diagnosis or treatment. *See* Evid.R. 803(4). Even if several of A.C.'s statements from her interview with Garman constituted hearsay, however, Just cannot demonstrate prejudice as a result of their admission. A.C. testified at trial to the same events that she described in her interview with Garman. "When hearsay testimony is essentially cumulative to a declarant's in-court testimony, any resulting error is harmless." *State v. Royston*, 9th Dist. No. 19182, 1999 WL 1215297, *2 (Dec. 15, 1999). Just's third assignment of error is overruled.

Assignment of Error Number One

THERE WAS INSUFFICIENT EVIDENCE TO CONVICT RON JUST OF THE CHARGES AGAINST HIM, AND THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶26} In his first assignment of error, Just argues that his gross sexual imposition convictions are based on insufficient evidence. He also argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶27} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is

whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶28} "No person shall have sexual contact with another, not the spouse of the offender; [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4). Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Whoever commits the foregoing offense is guilty of gross sexual imposition. R.C. 2907.05(C).

{¶29} A.C. testified that she and her sister began visiting Just by themselves when A.C. was about five years old. A.C. described the inside of Just's home in great detail. A.C. testified that she and her sister would play inside Just's home, watch his television, swim in his pond, and take rides on his four wheeler. When Just took the girls for rides on the four wheeler, Just always sat in the middle, with one of the girls behind him and the other in front.

{¶30} A.C. testified that when she rode behind Just on his four wheeler he would unzip his pants, grab her hand, and force her to touch his "boy part" while they rode. A.C. indicated that she could not see what she was touching, but that "it felt slimy." She testified that Just forced her to touch his "boy part" on the four wheeler more than once and warned her that she would "get in really big trouble" if she told anyone what had happened.

{¶31} A.C. also testified that Just forced her to feel inside his underwear in his living room while her sister sat on the couch and watched television. Just sat in a chair next to the couch, took A.C. on his lap, unzipped his pants, and made A.C. fondle him. Once again, A.C. testified that she did not see what she was touching, but that it felt "slimy and wet." On another occasion, Just took A.C. into his guestroom and touched her "bottom area" with his finger. A.C. identified her "bottom area" in court as her vagina by pointing to a diagram the State provided. A.C. testified that it hurt when Just touched her with his finger.

{¶32} A.C. also stated that Just touched her vagina with his finger on another occasion when she was in his bathroom. A.C. and her sister were wearing their swimsuits because they had planned to go swimming in Just's pond. Just told the girls, however, that they had to use the bathroom before they were allowed to go into the pond. When A.C. went into the bathroom after her sister, Just followed her inside and shut the door. He then pulled down her swimsuit bottoms and touched her "girl area."

{¶33} A.C. described another incident that took place in Just's bedroom. A.C. testified that he took her into his bedroom and locked the door while her younger sister was watching television. Just then unzipped his pants, put A.C. on the bed, and made her "rub his boy part." A.C. once again described Just's "boy part" as "wet and slimy." While the two were in the bedroom, A.C. testified, her sister knocked on the bedroom door and asked to be let in. Just told A.C.'s sister to go back and watch television while he continued forcing A.C. to touch him.

{¶34} A.C. also described other similar incidents where Just either touched her vagina with his finger or forced her to touch his penis. One incident occurred in Just's basement and another occurred in his pond while he was swimming with A.C. and her sister. A.C. also recalled an incident where Just used a washcloth or dishrag on her "girl area." A.C. testified that

she thought the washcloth or dishrag had baby oil or soap on it because it smelled like soap, stung, and "hurt really bad" when Just rubbed her with it. A.C. also stated that Just kissed her on the lips at least once and touched her "upper part," which she identified on the diagram as her breasts.

{¶35} A.C. could not recall the exact dates or occasions upon which any of the incidents with Just occurred. She only knew that they happened frequently and that she started going to Just's house without her mother when she was about five years old. A.C. did not tell her parents about the abuse for several years because Just told her that no one would believe her and that she would "get in really big trouble" if she told anyone.

{¶36} A.C.'s younger sister, M.S., also testified. M.S. agreed that she and her sister frequently went to Just's house to play. M.S. described the same sorts of activities that A.C. described. She also testified that Just sometimes took A.C. into his bedroom while she was watching television. M.S. stated that she did not know what happened in the bedroom because no one would tell her, but that the bedroom door was locked on one occasion when she tried to go in. M.S. testified that Just told her to go sit back down on the couch and watch television when she asked to be let inside the bedroom.

{¶37} A.C.'s mother, Rachel, testified that she began allowing A.C. and M.S. to visit Just by themselves around the time that A.C. turned five years old. Rachel recalled one occasion approximately a month before A.C. disclosed the abuse to her when A.C. came to her mother because she was concerned that there was "some white string that was hanging from her vagina." Rachel removed the string with a paper towel and asked A.C. about it, but A.C. did not know where it came from.

{¶38} Both Garman and Belanger testified that A.C. described the same type of abuse to them when they spoke with her at the hospital. A.C. told both women about Just touching her. She also described Just having touched her with a washcloth or dishrag. Belanger examined A.C. and indicated that she did not display any signs of physical trauma. Belanger opined, however, that she did not expect to find any trauma and the lack of trauma was consistent with the type of sexual abuse that A.C. had described.

{¶39} Just argues that his convictions are based on insufficient evidence because the State failed to set forth when every offense occurred, where it occurred, and what exactly occurred. Yet, A.C. described the abuse as occurring over a three-year period and was very young when the abuse began. "In light of the limited emotional development of [the] young victim[] * * *, and the extended period over which the abuse occurred, it is reasonable that [A.C.] could not remember exact times and dates of the traumatic abuse." *State v. Russell*, 9th Dist. No. 14714, 1991 WL 57331, *2 (Apr. 10, 1991). Viewing the evidence in a light most favorable to the State, we cannot agree that Just's gross sexual imposition convictions are based on insufficient evidence. A.C. described numerous instances of abuse during which Just touched her genitalia or forced her to touch his genitalia. A.C.'s sister corroborated her testimony to the extent that she recalled Just taking A.C. into his bedroom and locking the door. Based on our review of the record, a rational trier of fact could have found that the State proved five counts of gross sexual imposition. Consequently, Just's argument that his convictions are based on insufficient evidence lacks merit.

{¶40} Just also argues that his convictions are against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence an appellate court:

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶41} Just argues that his convictions are against the manifest weight of the evidence because A.C.'s testimony was not credible and because the circumstances indicate that A.C. lied about the abuse due to an ongoing conflict between Just and her parents. As to A.C.'s credibility, the trial court fully recognized that the evidence boiled down to A.C.'s version of the events and Just's version of the events. Just testified that he and A.C.'s parents repeatedly had disputes with one another that caused the police to be contacted more than once. On one occasion, A.C.'s parents became angry with Just because he would not allow them to use his pond for a party after he initially agreed to allow them to do so. Just theorized that the tension with A.C.'s parents caused A.C. to dislike him and fabricate the allegations of abuse.

{¶42} Credibility determinations are primarily within the province of the trier of fact. *State v. Violett*, 9th Dist. No. 11CA0106-M, 2012-Ohio-2685, ¶ 11. The fact-finder "is free to believe all, part, or none of the testimony of each witness." *State v. Cross*, 9th Dist. No. 25487,

2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35. Although A.C. was young at the time of trial as well as at the time the alleged abuse occurred, she was able to describe numerous instances of abuse in detail and her sister corroborated at least a portion of her testimony. The trial court simply chose to believe A.C.'s version of the events over Just's. Having reviewed the record, we cannot conclude that the court clearly lost its way by doing so. *Otten*, 33 Ohio App.3d at 340. Just's first assignment of error is overruled.

### Assignment of Error Number Four

THE APPLICATION OF THE CURRENT VERSION OF REVISED CODE CHAPTER 2950 (S.B.10) TO RON JUST VIOLATES THE EX POST FACTO OR RETROACTIVE LAW PROHIBITIONS OF THE FEDERAL AND STATE CONSTITUTIONS, AND IS PLAIN ERROR.

{¶43} In his fourth assignment of error, Just argues that the trial court violated his constitutional rights by classifying him as a Tier II offender under the Adam Walsh Act. Just argues that it is unconstitutional for the Adam Walsh Act to be retroactively applied to him. He relies upon *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, in which the Ohio Supreme Court held that the Adam Walsh Act is unconstitutional, "as applied to defendants who committed sex offenses prior to its enactment." *Williams* at syllabus. The Adam Walsh Act went into effect in 2007. The trial court convicted Just of committing five sex offenses between January 1, 2008, and May 3, 2011. All of Just's offenses, therefore, were committed after the Adam Walsh Act took effect. The trial court did not apply the Act to him retroactively. As such, Just's fourth assignment of error is overruled.

### Assignment of Error Number Five

THE TRIAL COURT COMMITTED PLAIN ERROR BY SENTENCING RON JUST TO MAXIMUM, CONSECUTIVE PRISON TERMS OF FIVE YEARS EACH AND BY SENTENCING HIM TO TERMS OF YEARS.

**{¶44}** In his fifth assignment of error, Just argues that the trial court committed plain error by sentencing him to serve maximum, consecutive prison terms. We disagree.

**{¶45}** Trial courts have "full discretion * * * to sentence defendants within the bounds prescribed by statute." *State v. Evans*, 9th Dist. No. 09CA0049-M, 2010-Ohio-3545, ¶ 32, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraphs one through seven of the syllabus. Appellate courts apply a two-step approach in reviewing the sentence that a trial court has imposed upon a defendant. *Evans* at ¶ 32, quoting *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 4. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Kalish* at ¶ 4. An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶46}** Just first argues that his sentence is void under *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, because the trial court expressed his sentence in terms of years when the sentencing statute only expresses sentences in terms of months. Just misquotes *Fischer*, leaving out the following italicized language: "A sentence that does not include the statutorily mandated term *of postrelease control* is void * * *." (Emphasis added.) *Fischer* at ¶ 1. *Fischer* does not support Just's argument that his sentence is void because the court expressed it in terms of years instead of months. The argument is absurd and is overruled.

**{¶47}** Much of Just's argument that his sentence is contrary to law stems from a misunderstanding of the law. Just argues that the trial court was required to make certain express findings before imposing a consecutive sentence upon him because *State v. Foster* is no longer in

effect, pursuant to *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320. *Hodge* did not overrule *Foster*; it clarified it. *State v. Allen*, 9th Dist. No. 25349, 2012-Ohio-249, ¶ 31. *Foster* struck down R.C. 2929.14 as unconstitutional to the extent it required judicial fact-finding before the imposition of a consecutive sentence. *Foster* at paragraph three of the syllabus. *Hodge* held that "the consecutive-sentencing statutes severed by *Foster* * * * remain null and of no effect absent an affirmative act of the General Assembly." *Hodge* at ¶ 36.

{¶48} On September 30, 2011, the General Assembly enacted 2011 Am.Sub.H.B. 86, 2011 Ohio Laws File 29, thereby revising R.C. 2929.14. In doing so, the General Assembly struck, and then reinserted, the language from R.C. 2929.14 excised in *Foster*. The statute now provides that a court may issue consecutive prison terms if the court finds (1) "the consecutive service is necessary to protect the public from future crime or to punish the offender," (2) "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and (3) one of three enumerated factors applies to the offender. R.C. 2929.14(C)(4)(a)-(c). Just relies upon the foregoing provision to argue that, because the trial court did not set forth R.C. 2929.14(C)(4)'s required findings in its sentencing entry, his sentence must be reversed. Just fails to account for other changes the General Assembly made to Ohio's sentencing regime in enacting 2011 Am.Sub.H.B. 86.

{¶49} Although the General Assembly reinserted language requiring the court to make certain findings before issuing consecutive prison terms, it excised the statutory subsection requiring a trial court to explicitly set forth those findings in imposing its sentence. Former R.C. 2929.19(B)(2)(c) provided: "The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed * * * [i]f it imposes consecutive sentences under section 2929.14 of the Revised Code * * *." In enacting the latest version of R.C.

2929.19, the General Assembly struck the foregoing provision entirely. R.C. 2929.19(B) now only requires a court to consider the record and other pertinent information before imposing a sentence and to include in its sentencing entry "whether the sentences are to be served concurrently or consecutively." Thus, although the General Assembly has expressed an intent that a trial court impose consecutive sentence only if it first finds that certain conditions exist, the General Assembly has eliminated the requirement that the court codify those findings in its sentencing entry. Because the trial court was not required to set forth its findings under R.C. 2929.14(C)(4)(a)-(c) in its sentencing entry, Just is incorrect in his assertion his sentence is contrary to law.

{¶50} Just also argues that the court abused its discretion in imposing a ten-year sentence because he is an elderly, low-risk offender. The record reflects, however, that Just sexually abused A.C. numerous times from a very young age, taking advantage of her vulnerability and telling her that she would get into trouble if she reported the abuse. A.C.'s parents completed a victim-impact statement as part of the pre-sentence investigation the court ordered and asked the court to impose the maximum possible sentence, given the deleterious effect his actions had on their daughter. Although the trial court imposed the five year maximum sentence on Just on each of his five counts, the court ordered four of the terms to run concurrently. As such, Just received a ten year term instead of the 25 year term the court could have imposed. Based on our review of the record, we cannot conclude that the trial court abused its discretion in imposing Just's ten year sentence. Just's fifth assignment of error is overruled.

### Assignment of Error Number Six

THE SENTENCE IS CONTRARY TO LAW BECAUSE IT DOES NOT STATE
THE PENALTIES FOR VIOLATION OF POST-RELEASE CONTROL.

{¶51} In his sixth assignment of error, Just argues that his sentence is contrary to law because the court failed to advise him of the penalties for violating post-release control in his sentencing entry. The record reflects that the trial court properly notified Just of post-release control and the penalties for violating his term of post-release control at his sentencing hearing. In the court's sentencing entry, however, the court only imposed Just's term of post-release control. The court "failed to specify that if [Just] violated his supervision or a condition of post[-]release control, the parole board could impose a maximum prison term of up to one-half of the prison term originally imposed." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 308. Additionally, the court "failed to properly state the length of confinement that could be imposed for a violation of post[-]release control." *Id.* The remedy for such an error is a remand to the trial court so that the court may enter a nunc pro tunc sentencing entry that both imposes post-release control and notifies Just of the sanctions for violating it. *Id.* at ¶ 309. Just's sixth assignment of error is sustained.

Assignment of Error Number Eight

> THERE WAS INEFFECTIVE ASSISTANCE OF COUNSEL, UNLESS THE ERRORS HEREIN ARE REMEDIABLE UNDER THE CLAIMS OF PLAIN ERROR.

{¶52} In his eighth assignment of error, Just argues that he received ineffective assistance of counsel. We disagree.

{¶53} To prove an ineffective assistance claim, Just must show two things: (1) that counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, Just must prove that "there exists a reasonable probability that, were it not

for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland* at 691. Furthermore, this Court need not address both *Strickland* prongs if an appellant fails to prove either one. *State v. Ray*, 9th Dist. No. 22459, 2005-Ohio-4941, ¶ 10.

{¶54} Just argues that his trial counsel was ineffective because he did not object to Just's (1) indictment on the basis that the counts were "carbon copies" of one another, (2) sexual offender classification on the basis that it constituted an unconstitutional application of the Adam Walsh Act, and (3) sentence on the basis of "sentencing errors." Just's ineffective assistance argument essentially restates many of the arguments he raised in other assignments of error. Because we have rejected all of these arguments on their merits, it follows that Just cannot demonstrate an ineffective assistance of counsel claim by relying on those same arguments. Just's eighth assignment of error is overruled.

### III

{¶55} Just's sixth assignment of error is sustained, and his remaining assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed in part, reversed in part, and remanded to the trial court for the issuance of a nunc pro tunc entry consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

 

BETH WHITMORE
FOR THE COURT

 

MOORE, J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶56} Although I disagree with the majority's analysis of the Confrontation Clause issues in the third assignment of error, I would nonetheless reach the same result in this instance. I concur with the balance of the opinion.

APPEARANCES:

CLARKE W. OWENS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.