[Cite as *State v. Mignano*, 2024-Ohio-5463.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 31051 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY F. MIGNANO | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR-2023-03-1004 |

DECISION AND JOURNAL ENTRY

Dated: November 20, 2024

HENSAL, Judge.

{¶1} Anthony Mignano appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Twelve-year old M.E. accused Mr. Mignano of repeatedly engaging in sexual conduct with her. He was indicted on six counts of rape, one count of corrupting another with drugs, and one count of gross sexual imposition. After he was indicted, M.E. passed away. The State notified Mr. Mignano of its intent to rely on statements M.E. made during her interview at Akron Children's Care Center. Mr. Mignano moved to suppress the recording of the interview. The State filed a motion in limine, asking the trial court to find M.E.'s statements admissible.

{¶3} The trial court held an evidentiary hearing on the competing motions. It denied Mr. Mignano's motion to suppress and granted the State's motion in limine. The court found M.E.'s

statements were admissible because they were elicited for the purpose of medical diagnosis and treatment. Following the court's ruling, Mr. Mignano entered a plea of no contest.

{¶4} Mr. Mignano pleaded no contest to three counts of rape and one count of gross sexual imposition. The State agreed to dismiss his remaining counts. The court sentenced him to an indefinite term of ten years to life in prison. It also classified him as a tier III sex offender. Mr. Mignano appeals, assigning one error for review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT RULED THAT A RECORDED STATEMENT OF THE VICTIM WAS ADMISSIBLE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶5} In his sole assignment of error, Mr. Mignano argues the trial court erred when it denied his motion to suppress M.E.'s recorded interview. He argues her recorded statements were testimonial, and thus, barred by the Confrontation Clause. Upon review, we reject his argument.

{¶6} "Evidentiary rulings that implicate the Confrontation Clause are reviewed de novo . . . ." *State v. Calhoun*, 2021-Ohio-1713, ¶ 14 (9th Dist.). Consequently, we must conduct "an independent review of the trial court's decision without any deference to [its] determination." *State v. Consilio*, 2006-Ohio-649, ¶ 4 (9th Dist.).

{¶7} The Confrontation Clause affords criminal defendants the right to confront the witnesses against them. U.S. Const., amend. VI. It applies to testimonial statements. *State v. Stahl*, 2006-Ohio-5482, ¶ 15. Before a testimonial statement from an unavailable declarant can be admitted at trial, a criminal defendant must have had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "[T]estimonial statements are those

made for 'a primary purpose of creating an out-of-court substitute for trial testimony.'" *State v. Maxwell*, 2014-Ohio-1019, ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). "If a statement's primary purpose is anything else, the statement is nontestimonial." *Id.* at ¶ 40.

{¶8} "Statements made for the purpose of medical diagnosis and treatment are nontestimonial." *State v. Arnold*, 2010-Ohio-2742, ¶ 28. *See also* Evid.R. 803(4) (providing a hearsay exception for statements made for the purpose of medical diagnosis and treatment). Conversely, "statements made to agents of the police for the primary purpose of forensic investigation are testimonial." *Arnold* at ¶28. "'Considerations that should be taken into account in making [a primary purpose] determination include the manner in which the child was questioned, whether there was a motive to fabricate, and whether the child understood the need to tell the truth.'" (Bracketed text in original.) *State v. Weaver*, 2018-Ohio-2998, ¶ 12 (9th Dist.), quoting *State v. Walters*, 2018-Ohio-1175, ¶ 33 (9th Dist.). "The court also may consider 'the child's age and whether the proper protocol for interviewing children alleging sexual abuse was followed.'" *Id.* at ¶ 12, quoting *Walters* at ¶ 33. "[T]he same interview or interrogation might produce both testimonial and nontestimonial statements." *Arnold* at ¶ 41, citing *Davis v. Washington*, 547 U.S. 813, 828-829 (2006).

{¶9} At the motions hearing, Detective Kelly Brown testified that M.E.'s father contacted the police department to report that she had been sexually abused. The police department notified Akron Children's Care Center, and the Care Center scheduled an interview for M.E. Detective Brown was present for M.E.'s interview. She testified that she sat in a separate room and observed the interview through a video feed while M.E. spoke one-on-one with a social worker. She explained that her role was strictly to watch the interview. She did not prompt the social worker or supply her with questions to ask M.E. She testified that Care Center interviews

aid her investigations because they give her "a direction to go and look for evidence." Additionally, the detective explained, a single interview eliminates the need for different agencies to re-question victims and expose them to additional trauma. The detective testified that she spoke with Mr. Mignano after she observed M.E.'s interview. Mr. Mignano admitted he had engaged in sexual conduct with M.E.

{¶10} The social worker who interviewed M.E. testified that she conducts diagnostic interviews at the Care Center. She described a diagnostic interview as one performed to aid a medical provider in diagnosing the child being interviewed. She explained that her role was that of a neutral factfinder. Before conducting an interview, the social worker testified, she would review a child's intake form and briefly speak with either the child's caregiver, the law enforcement officer who might be present, or both. She stated that she did so to have a better understanding of the child's development and the needs of the interview. The social worker testified that other agencies, including law enforcement, routinely observed her interviews with the aim of reducing the number of times a child must rehash a traumatic incident. She testified that she refrained from asking leading questions during diagnostic interviews so as not to influence a child's answers.

{¶11} The social worker testified that, when she spoke with M.E., they were alone in an interview room. She testified that no one prompted her or supplied her with questions to ask M.E. When the interview began, she told M.E. they were talking to see what type of medical checkup M.E. would need at the conclusion of the interview. She testified that M.E. was quiet and shy but forthcoming. At the conclusion of the interview, she took M.E. to one of the medical providers at Akron Children's for an exam. She also spoke with M.E.'s father to give him information about

additional resources for M.E. The social worker testified that the nature of M.E.'s disclosures led her to contact Summit County Children's Services.

{¶12} The trial court found M.E.'s statements were nontestimonial, as they were provided for the primary purpose of a medical diagnosis. The court found that her interview was conducted in an open-ended manner, she showed that she understood the need to be truthful, and she lacked a motive to fabricate the allegations she made. The court found that the open-ended format of the interview "reasonably allowed for M.E. to produce her own authentic statements in response" to the social worker's questions. The court concluded that her statements were admissible because they did not offend the Confrontation Clause and met the hearsay exception contained in Evidence Rule 803(4).

{¶13} Mr. Mignano argues the trial court erred when it found M.E.'s statements were nontestimonial. He notes that the social worker spoke with Detective Brown before the interview and could not even say whether M.E. had already seen a medical provider. According to Mr. Mignano, "there is no evidence in the record that [M.E.'s] interview was used for any medical examination." Further, he argues the trial court erred by admitting M.E.'s statements in their entirety. He notes that the court failed to consider her individual statements to determine whether at least some of the statements were testimonial. We begin by addressing his last argument.

{¶14} As previously noted, a single interview can produce both testimonial and nontestimonial statements. *See Arnold*, 2010-Ohio-2742, at ¶ 41. In moving to suppress M.E.'s interview, however, Mr. Mignano did not challenge any of her individual statements. He made a blanket assertion that her statements were testimonial. On appeal, he likewise expresses his argument in terms of generalities. He has not identified or analyzed any of M.E.'s individual statements to explain why they were testimonial. This Court is loath to address issues for the first

time on appeal. *See State v. Williamson*, 2022-Ohio-185, ¶ 31 (9th Dist.). We also will not construct an argument on an appellant's behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998). Given the argument Mr. Mignano presented in both the trial court and this Court, we cannot conclude the trial court committed reversible error when it engaged in an abbreviated review.

{¶15} The record does not support Mr. Mignano's assertion that "there is no evidence . . . [M.E.'s] interview was used for any medical examination." The social worker specifically testified that she conducted M.E.'s interview to determine what type of medical assessment she needed. She testified that, following the interview, she took M.E. to one of the hospital's medical providers for a medical exam. She also provided M.E.'s father with follow-up resources for M.E. and, due to safety concerns she had for M.E., she contacted Children's Services. Even if the social worker briefly spoke with Detective Brown before her interview with M.E., she explained that she reviewed intake notes and sometimes spoke with officers to better understand the needs of the child she was about to interview. She testified that no one supplied her with the questions she asked M.E., and the recording of the interview shows she questioned M.E. in an open-ended manner. There is no evidence that the social worker failed to follow proper interview protocols. *See Weaver*, 2018-Ohio-2998, at ¶ 12 (9th Dist.), quoting *Walters*, 2018-Ohio-1175, at ¶ 33 (9th Dist.). Nor is there evidence that M.E. had a motive to fabricate or did not understand the need to be truthful. *See id.* at ¶ 12, quoting *Walters* at ¶ 33. Upon review of Mr. Mignano's limited argument, he has not shown the trial court erred by concluding that M.E.'s statements were elicited for the primary purpose of a medical diagnosis and treatment such that they were nontestimonial. *See Arnold*, 2010-Ohio-2742, at ¶ 28. We reject his argument to the contrary. As such, his sole assignment of error is overruled.

III.

{¶16} Mr. Mignano's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SUTTON, P. J.
CONCURS.

FLAGG LANZINGER, J.
DISSENTING.

{¶17} I respectfully dissent from the majority opinion because I would reverse the decision of the trial court. The majority holds that the trial court did not err when it determined that the statements M.E. made to the social worker at the Care Center were elicited for the primary purpose of a medical diagnosis and treatment such that they were nontestimonial. In doing so, the majority acknowledges that an interview can produce testimonial and nontestimonial statements. The majority declines to analyze any individual statements contained in the 34-minute recorded interview on the basis that Mignano did not identify specific statements that he claims are testimonial below or on appeal. I disagree with this approach.

{¶18} In *State v. Arnold*, the Ohio Supreme Court "held that the nontestimonial statements the child offers for purposes of medical diagnosis or treatment must be separated from the testimonial statements offered for forensic purposes." *State v. Just*, 2012-Ohio-4094, ¶ 21 (9th Dist.), citing *State v. Arnold*, 2010-Ohio-2742, paragraphs one and two the syllabus. *Arnold* addressed the dual capacity of social workers at child-advocacy centers (and their functional equivalents) to gather information for forensic and medical purposes during their interviews with children. *Id.* at ¶ 33. The *Arnold* Court explained that the goal of child advocacy centers is "to reduce trauma to a child-abuse victim by coordinating the interview to include professionals from multiple agencies, which, in turn, can reduce the number of interviews needed and improve the quality of the investigation, the diagnosis, and the recommendation for treatment." *Arnold* at ¶ 30. The *Arnold* Court recognized that these interviews can produce statements that contain distinct medical diagnostic and forensic information. *Id.* at ¶ 21. If the primary purpose of the statements is forensic, then the statements are "testimonial in nature and their admission without a prior

opportunity for cross-examination is prohibited by the Confrontation Clause." *Arnold* at ¶ 36, citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

{¶19} Here, Detective Brown testified that M.E.'s interview at the Care Center was scheduled at the direction of the police department. Detective Brown testified that these types of interviews are an important part of her investigation. Detective Brown also testified that the police observed the interview "so [M.E.] would not be questioned by different agencies over and over again and re-traumatize her from the assault. So they bring everyone together, and we can listen while she is having the interview, and we don't have to re-interview her."

{¶20} The social worker testified that her interview with M.E. was for diagnostic purposes only. The social worker also testified that the police did not prompt her to ask any specific questions. The social worker acknowledged that she was trained in forensic interviewing, and that "a diagnostic interview is based off a forensic interview . . . ."

{¶21} Regardless of the social worker's testimony that the interview was for diagnostic purposes only—or the fact that the police did not prompt the social worker to ask any specific questions—the interview in this case fell within the category of interviews contemplated in *Arnold*. *See Arnold*, 2010-Ohio-2742, at ¶ 30. Consequently, the trial court was required to separate the nontestimonial statements offered for purposes of medical diagnosis from the testimonial statements offered for forensic purposes. *Just*, 2012-Ohio-4094, at ¶ 21 (9th Dist.), citing *Arnold* at paragraphs one and two the syllabus.

{¶22} As this Court has explained, "statements identifying a perpetrator, describing instances of abuse, and describing the manner in which the perpetrator touched the victim's body are all admissible as statements made for the purpose of medical diagnosis and treatment." *State v. Weaver*, 2018-Ohio-2998, ¶ 24 (9th Dist.). To be clear, M.E.'s recorded interview contained

such statements. As explained below, those statements amounted to a small portion of the 34-minute recorded interview that the trial court held was admissible in its entirety.

{¶23} A review of M.E.'s interview reflects that it is replete with statements that were not made for the primary purpose of medical diagnosis. These include, but are not limited to, M.E.'s statements: (1) regarding how she met Mignano; (2) that prior to meeting Mignano, she heard her father and his friend talking about how there was "a lot of pedophilia" in Mignano's family; (3) that Mignano comes from a "bloodline and history of his family liking children[;]" (4) that Mignano said "don't tell anybody because he could get in trouble" after their first physical interaction; (5) regarding where her father was when the alleged abuse occurred; (6) that Mignano used to do "heavy drugs or party drugs . . . but then he quit a few years ago[;]" (7) regarding how her father found out about the alleged abuse; and (8) regarding where the alleged abuse occurred. The social worker also asked M.E. whether she knew if Mignano had done "this with someone else. . . ." M.E. responded that Mignano told her he had "never ever touched another young girl." None of the foregoing was made for the primary purpose of medical diagnosis. *See Arnold* at ¶ 34 (regarding statements that were not made for the primary purpose of medical diagnosis); *Just* at ¶ 23 (9th Dist.) (same); *In re T.L.*, 2011-Ohio-4709, ¶ 18 (9th Dist.) (same); *State v. L.E.F.*, 2014-Ohio-4585, ¶ 13 (10th Dist.) (same); *compare Weaver* at ¶ 24.

{¶24} Here, the trial court made no effort to separate the nontestimonial statements from the testimonial statements as required under *Arnold*. The trial court ostensibly reasoned that, because some of the statements were nontestimonial on the basis that they were made for the primary purpose of medical diagnosis, the entire 34-minute recorded interview was nontestimonial and, therefore, admissible. But that is not the law. The trial court's admission of the testimonial

statements contained in the recorded interview violated Mignano's rights under the Confrontation Clause.

{¶25} Having determined that the trial court erred by determining that the entire 34-minute recorded interview was admissible, the next step is to analyze whether the trial court's decision resulted in harmless error. Generally, a Sixth Amendment error is harmless if there is no reasonable probability that the erroneously admitted evidence contributed to the defendant's conviction. *State v. Conway*, 2006-Ohio-791, ¶ 78. Here, the case did not proceed to trial. Instead, Mignano pleaded no contest. Thus, the test is whether the admission of the evidence had a material impact on Mignano's decision to plead no contest. *State v. LaRosa*, 2021-Ohio-4060, ¶ 52, 55. As the Ohio Supreme Court has acknowledged, this is a difficult test to apply considering courts do not have "a full picture of the evidence" at this stage of the proceedings. *LaRosa* at ¶ 52. Indeed, finding harmless error under these circumstances "might be the rare case . . . ." *Id.*

{¶26} It is unclear what other evidence the State had to prove Mignano's guilt. According to Detective Brown, Mignano admitted that he engaged in sexual conduct with M.E. Neither the context of that admission, nor its admissibility as evidence against Mignano, is clear from the record. In light of the limited record before this Court, I would hold that the trial court's erroneous admission of evidence in violation of Mignano's constitutional rights did not result in harmless error.

{¶27} Without question, the allegations in this case are as disturbing as M.E.'s passing is tragic. Nothing in this dissent should be construed as undermining or overlooking those facts. Yet disturbing allegations and tragic circumstances cannot justify depriving a criminal defendant of his constitutional rights. As "guardians of the Constitution[,]" courts must resist the temptation to let the end justify the means. *State v. Gardner*, 2012-Ohio-5683, ¶ 24 ("There is always a

temptation in criminal cases to let the end justify the means, but as guardians of the Constitution, we must resist that temptation."). Accordingly, I respectfully dissent.

APPEARANCES:

PAUL GRANT, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.